**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| DENNIS BLACK, ET AL., | Case No. 09-13616 |
| Plaintiffs, | SENIOR UNITED STATES DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| PENSION BENEFIT GUARANTY CORPORATION, ET AL., | UNITED STATES MAGISTRATE JUDGE MONA K. MAJZOUB |
| Defendants. | |

**ORDER GRANTING DEFENDANTS UNITED STATES DEPARTMENT OF THE TREASURY, PRESIDENTIAL TASK FORCE ON THE AUTO INDUSTRY, TIMOTHY F. GEITHNER, STEVEN L. RATTNER, AND RON A. BLOOM'S RENEWED MOTION TO DISMISS [164]**

Plaintiffs filed their initial Complaint [1] in this matter on September 14, 2009. They then filed their First Amended Complaint [10] on November 5, 2009. Subsequently, they filed their Second Amended Complaint [145] on August 26, 2010.

Now before the Court is Defendants' Renewed Motion to Dismiss [164]. A hearing was held on the Motion on August 17, 2011.

Defendants seek to dismiss the claims brought against them in Count 5 of Plaintiffs' Second Amended Complaint (no other count raises claims against them). The Second Amended Complaint requests that this Court order the named "Treasury Defendants," which include the United States Department of the Treasury, the Presidential Task Force on the Auto Industry, Timothy F. Geithner, Steven L. Rattner, and Ron A. Bloom, "to extend the top-up benefits to all Salaried Plan participants." Counsel for the government represented to the Court at the August 17, 2011 hearing that the amount in supplemental benefits Plaintiffs want this Court to order totals $600,000,000. However, the Second Amended Complaint does not specify the amount Plaintiffs want this Court to order the Treasury Defendants to pay.

The Second Amended Complaint further requests that this Court "[a]ward[] compensatory

and punitive damages against Defendants Geithner, Bloom, and Rattner, in their individual capacities." Again, counsel for the government represented to the Court at the August 17, 2011 hearing that the amount Plaintiffs want this Court to order in damages is $600,000,000. However, the Second Amended Complaint does not specify the amount of damages sought.

Upon review of the parties' filings, along with consideration of the arguments raised during the hearing, the Court concludes, for the reasons that follow, that Defendants' Motion is **granted**. Plaintiffs' claims against the named Treasury Defendants are dismissed.

Nevertheless, Plaintiffs' claims brought against the PBGC in Counts 1, 2, 3, and 4 of the Second Amended Complaint remain. Plaintiffs may continue to pursue their claims against the PBGC. Counsel for Plaintiffs asserted that it was his position at the August 17 hearing that even if the Treasury Defendants' motion were granted, Plaintiffs, if they prevail against the PBGC, could still be "fully compensated." The Court also anticipates that Plaintiffs will continue to utilize the political process to pursue the relief they seek.

**I. Introduction**

The Second Amended Complaint Plaintiffs filed is properly before this Court. Nonetheless, the subject of the complaint may be a matter that is best resolved through the political process. Indeed, Plaintiffs have successfully availed themselves of that process. Although they have not yet received the relief they seek, counsel for Plaintiffs noted at the August 17, 2011 hearing that there is an ongoing GAO investigation and ongoing special investigator general investigation into the issues raised in the Second Amended Complaint.

However, Plaintiffs, not this Court, get to choose what avenues they will utilize to pursue their claims for relief in order to rectify the alleged wrongdoing they assert Defendants committed. At this time, Plaintiffs seek to litigate this matter, along with their other efforts outside of the judicial system.

As Defendants' Renewed Motion is ripe for decision, the Court will consider its merits.

**II. Standard of Review**

The Supreme Court, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) set forth the rules that guide this Court's examination of Defendants' Renewed Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). In *Iqbal*, the Court observed:

> Under *Federal Rule of Civil Procedure 8(a)(2)*, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in *Twombly*, the pleading standard *Rule 8* announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of 'further factual enhancement.'
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S. Ct. at 1949 (citations and internal quotation marks omitted).[1] Moreover, "the tenet that a

---

[1] The Supreme Court's rulings in *Iqbal* and *Twombly* have generated a great amount of academic commentary. One commentator, lamenting the departure of those decisions from the "notice-pleading" approach set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), states that "[t]he Court's establishment of plausibility pleading, with its emphasis on the need for factual allegations, has a direct impact on the accessibility of the federal courts to the citizenry in all categories of cases. To a degree not yet determined, it will chill a potential plaintiff's or lawyer's willingness to institute an action. And even if one is started, it will result in some possibly meritorious cases being terminated under Rule 12(b)(6), thereby reducing citizens' ability to employ the nation's courts in a meaningful fashion." *See* Arthur Miller, *From* Conley *to* Twombly *to* Iqbal*: A Double Play on the Federal Rules of Civil Procedure*, 60 DUKE L.J. 1, 71 (2010).

The Court shares in these concerns. However, the Court is bound by the Supreme

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Additionally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged– but it has not show[n]– that the pleader is entitled to relief." *Id*. at 1950 (citation and internal quotation marks omitted).

The Sixth Circuit has held:

> Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. If a court does consider materials outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under *Rule 56* and all parties must be given a reasonable opportunity to present all material pertinent to the motion.

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Although Defendants attach numerous exhibits to their motion, they make clear that the "motion relies exclusively on the allegations of the second amended complaint" and that the motion is being brought pursuant to Fed. R. Civ. P. 12(b)(1) and (6), not Fed. R. Civ. P. 56. Renewed Motion at 4. Plaintiffs do not request that the Court treat Defendants' motion as one for summary judgment, despite attaching their own extrinsic evidence to their response brief.

This Court will not treat Defendants' motion as one for summary judgment. Nevertheless, in ruling on a motion to dismiss, the Court "*may* consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo*, 641 F.3d at 680-681 (emphasis added) (citation and internal quotation marks omitted); *see also Vance*

---

Court's holdings and must adhere to the standard of review as set forth in *Iqbal* and *Twombly* until such time as those cases are overruled.

*v. Rumsfeld*, 2011 U.S. App. LEXIS 16338 at *27 (7th Cir. 2011)  ("A party whose pleading is being attacked on appeal under *Rule 12(b)(6)* may elaborate [in his brief] on his allegations so long as the elaborations are consistent with the pleading").[2]  At the hearing held on August 17, 2011, counsel for Plaintiffs asserted that "this is again not a summary judgment proceeding.  It's just a motion to dismiss.  And so you consider the complaint, their motion, and you are permitted to consider our opposition to the motion."[3]

The Court, pursuant to the above authority, will, as Plaintiffs request, consider not only the Second Amended Complaint but Defendants' motion and reply and Plaintiff's response in evaluating Defendant's motion.  However, the motion will still be treated as one brought pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants' motion is brought not only pursuant to Fed. R. Civ. P. 12(b)(6), but also under Fed. R. Civ. P. 12(b)(1).  Motions brought under this section challenge the Court's subject-matter jurisdiction.  Defendants' challenge to Plaintiffs' standing is brought pursuant to this section.  12(b)(1) motions "generally come in two varieties[,]" with the motion here being a "facial attack"; such an "attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.  In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

---

[2] The Court notes that the Sixth Circuit's decision in *Rondigo* and Seventh Circuit's decision in *Vance* were both issued subsequent to the Supreme Court's ruling in *Iqbal*.

[3] Subsequent to the hearing, counsel for Plaintiffs filed "Notice of Supplemental Authority" [190], submitting authority as to the issue of "whether Plaintiffs could further substantiate the factual allegations in their complaint with additional facts and materials presented either as part of the Treasury Defendants' motion or Plaintiffs' opposition to the motion, in order to demonstrate the 'plausibility' of the complaint's allegations under... *Iqbal*...."  Notice of Supplemental Authority at 1.

## III. Discussion

### A. Standing

The parties do not disagree that three elements must be demonstrated to establish constitutional standing:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized,... and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (citations and internal quotation marks omitted).[4] "The basis for constitutional standing is derived from Article III's 'Case or Controversy' requirement, which limits federal court authority to legal issues which are traditionally thought to be capable of resolution through the judicial process." *Club Italia*, 470 F.3d at 291 (citation and internal quotations marks omitted). "If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction.... Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (internal citations omitted).

Defendants do not contest that Plaintiffs have suffered an injury in fact. Instead, they indicate they are challenging the other requirements of standing, stating, "Plaintiffs lack standing to contest the validity of the contested commitments because the injury they allege does not meet the requirements of causation or redressability." See Defendants' Motion at 13. Defendants' standing argument relies heavily on the Tenth Circuit's decision in *Day v. Bond*, 500 F.3d 1127

---

[4] In addition to constitutional limitations on standing, "prudential standing" requirements also exist. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 291 (6th Cir. 2006). Defendants do not challenge Plaintiffs' ability to meet these requirements.

6

(10th Cir. 2007). Plaintiffs attempt to differentiate this matter from the facts of *Day* and assert that they have satisfied all standing requirements.

The Court finds that Plaintiffs lack standing to bring their claim for an equal protection violation. In *Day*, the plaintiffs (a group of non-legal residents of Kansas and their parents) brought an equal protection claim under the Fourteenth Amendment, asserting that a Kansas law violated their rights in that it allowed "certain illegal aliens to qualify for in-state tuition rates" but not them. *Id.* at 1130. The Court of Appeals affirmed the district court's dismissal of their claim, concluding that they lacked standing since none of the plaintiffs would be eligible to pay an in-state tuition rate "even if the allegedly discriminatory test... favoring illegal aliens were stricken, because none attended Kansas high schools for at least three years and either graduated from a Kansas high school or received a Kansas GED certificate [these were conditions that had to be met to receive the rate]." *Id.* at 1135. As this was "a nondiscriminatory prerequisite for benefits" that disqualified plaintiffs from receiving the tuition rate regarding of their citizenship, plaintiffs' injuries "were therefore not caused by the statute's allegedly discriminatory operation, nor would these injuries be redressed by a decision striking down the discriminatory classification embedded in its provisions." *Id*. at 1135. Accordingly, their claims were subject to dismissal based on lack of standing.

Here, Plaintiffs fail to sufficiently plead that they have standing to bring their equal protection claim.[5] Plaintiffs plead no facts that would allow this Court to conclude that even if the allegedly discriminatory test for determining benefits were stricken, Plaintiffs would be

---

[5] In *Day*, plaintiffs brought their equal protection claim under the Fourteenth Amendment. Here, Plaintiffs bring their equal protection claim under the Fifth Amendment. However, the Sixth Circuit has noted that it "evaluate[s] equal protection claims against the federal government under the *Fifth Amendment* just as [it] would evaluate equal protection claims against state and local governments under the *Fourteenth Amendment*." See *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 2011 U.S. App. LEXIS 16002 at *21 (6th Cir. 2011).

7

entitled to the top-ups they seek. The Second Amended Complaint states that "Plaintiffs have been denied the benefit of a top-up solely on the basis of their choice not to associate with a union, in violation of the First and Fifth Amendments to the United States Constitution." Second Amended Complaint at ¶37. Plaintiffs also plead that the decision to provide "top-ups has benefited only certain union-affiliated retirees" and that "the decision was made for political reasons– on the basis of affiliation with a particular union or unions– and not on the basis of any relevant extenuating circumstances." *Id.* at ¶59. However, nowhere in the language of the Second Amended Complaint do Plaintiffs plead any facts stating what the requirements of receiving the top-ups were and how Plaintiffs would have been eligible to receive them if the allegedly discriminatory test were removed.

Furthermore, even looking beyond the four corners of the Second Amended Complaint and considering the motion and response, the Court finds that Plaintiffs have failed to plead what the requirements of receiving the top-ups are and that they thus would have been eligible for the top-ups if the allegedly discriminatory test were stricken. Plaintiffs do assert in their brief that "[t]here is no underlying impediment, statutory or otherwise, which would have rendered Plaintiffs ineligible to receive pension aid from Old or New GM" and that "there are no non-discriminatory requirements that would have denied Plaintiffs supplemental pension benefits like those received by the favored retirees...." Plaintiffs' Response at 22. However, these are conclusory statements that do not inform the Court of any facts that would allow it to infer that Plaintiffs meet all requirements for the top-ups. *Iqbal* makes clear that such pleading is insufficient.

Regardless of whether the decision may have been based on a "discriminatory test," the Court is unable to infer from the facts plead that even if that test were stricken, Plaintiffs have met all eligibility requirements to receive the top-ups they seek. Therefore, similar to the plaintiffs in

8

*Day*, plaintiffs lack standing based on lack of causation and redressability.  Their equal protection claim against the named Treasury Defendants is subject to dismissal on this ground.

**B. Equal Protection**

Plaintiffs argue in their brief that they have adequately plead an equal protection claim, stating:

> In short, reading all of the allegations in Plaintiffs' favor, the Salaried Retirees' Second Amended Complaint satisfies the minimal threshold of plausibility.  Their assertion that the Treasury Defendants unconstitutionally distinguished between similarly situated individuals based on their affiliation with politically favored unions, and the speech of those unions, both is legally tenable under the First and Fifth Amendments and factually sufficient.

Plaintiffs' Response at 47.

Assuming arguendo that– 1) Plaintiffs have plead sufficiently regarding their standing to bring their equal protection claim 2) Plaintiffs have sufficiently plead regarding the existence of state action 3) Plaintiffs have sufficiently plead regarding the Court's authority to order relief in this action– Plaintiffs' equal protection claim brought against the named Treasury Defendants is still subject to dismissal.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center*, 2011 U.S. App. LEXIS 16002 at *37 (quoting *Club Italia*, 470 F.3d at 298).[6]  Moreover, "the 'threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers.'" *Center*, 2011 U.S. App. LEXIS 16002 at *37-38 (quoting

---

[6] As indicated in Footnote 5, courts evaluate equal protection claims in the same manner under both the Fifth and Fourteenth Amendment.

9

*Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).[7]

Finally, in addressing the "similarly situated" element of a disparate treatment claim, the Sixth Circuit has concluded that a party must establish "that it and other individuals who were treated differently were similarly situated *in all material respects*." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 836 (6th Cir. 2009) (unpublished) (emphasis added); *see also TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005) ("Materiality is an integral element of the rational basis inquiry. Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational. Conversely, disparate treatment of persons is reasonably justified if they are dissimilar in some material respect").

Here, Plaintiffs' equal protection claim is subject to dismissal because Plaintiffs fail to adequately plead that the government treated the plaintiffs disparately as compared to "similarly situated" persons. Plaintiffs plead that it was announced that top-ups would be provided to "'certain limited groups' of Delphi retirees, specifically the hourly workers represented by the United Auto Workers union." Second Amended Complaint at ¶36. Plaintiffs go on to assert that the decision to provide top-ups "was made for political reasons– on the basis of affiliation with a particular union or unions– and not on the basis of any relevant extenuating circumstances." Second Amended Complaint at ¶59. Plaintiffs further plead that "[t]he decision to discriminate against similarly situated retirees based directly on associational status violates the Equal Protection component of the Fifth Amendment to the U.S. Constitution...." *Id*. at ¶60. Plaintiffs also seek damages against the individual Defendants for "denying [them] the same benefits

---

[7] Plaintiffs assert that the decision to award top-ups was made based on the classification of a retiree's association with a union. In "*Lyng v. UAW* [485 U.S. 360 (1988)], the Supreme Court addressed the question of whether union members constituted a protected class for purposes of equal protection analysis and found that they did not. Like-wise, non-union members do not constitute a protected class, nor do union or non-union contractors." *Hoke Co., Inc. v. TVA*, 854 F.2d 820, 828 (6th Cir. 1988) (internal citations omitted).

provided to the similarly situated union affiliated retirees...." *Id*. at ¶63.

However, nowhere in the Second Amended Complaint are facts plead stating how Plaintiffs are "similarly situated" to those retirees who did receive the top-ups. Furthermore, Plaintiffs do not even plead that they are "similarly situated in all material respects." Plaintiffs only offer "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (citation and internal quotation marks omitted). The Court is therefore unable to draw the inference that Defendants are liable for an equal protection violation since Plaintiffs have not plead facts that would allow this Court to determine that Plaintiffs are similarly situated to the other retirees.

Even if the Court goes beyond Plaintiffs' Second Amended Complaint and considers its response [168], Plaintiffs still fail to properly plead under *Iqbal*. The response notes that "[t]he similarly situated retirees" are part of three unions and that Defendants "unconstitutionally distinguished between similarly situated individuals based on their affiliation with politically favored unions...." *See* Response at 2, 47. These statements are conclusory and do not establish "plausibility." Plaintiffs fail to offer facts demonstrating how the retirees who did receive top-ups are similarly situated in all material respects with Plaintiffs.

Accordingly, the Second Amended Complaint fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949; *see also Center*, 2011 U.S. App. LEXIS 16002 at *38 (court, in affirming dismissal of equal protection claim pursuant to Fed. R. Civ. P. 12(b)(6), concludes that "the Amended Complaint fails to make a plausible allegation that similarly situated organizations and individuals... have not been subject to the same alleged treatment by Defendants.... The allegations contained in the Amended Complaint as to disparate treatment amount to conclusory and unadorned assertions that, consequently, are not well-pleaded, and not entitled to a presumption of truth at this stage of

11

the litigation") (citation omitted); *Rondigo*, 641 F.3d at 683-684 (court, in reversing district court's denial of defendants' motion to dismiss plaintiff's equal protection claim, concludes that "[t]he district court's contrary ruling is based in part on a failure to apply the Supreme Court's teaching in *Twombly* and *Iqbal*. The district court expressly recognized the applicability of *Twombly*, recognized that legal conclusions not be accepted as true, and recognized that the complaint must set forth 'some factual basis' for the claims asserted. Yet, the court accepted plaintiff's alleged legal conclusions that [another individual] was similarly situated and that they were treated differently because of gender-based discrimination without requiring supporting factual allegations"). The equal protection claim against the named Treasury Defendants is therefore subject to dismissal.

### C. First Amendment

Again assuming arguendo that– 1) Plaintiffs have plead sufficiently regarding their standing to bring their equal protection claim 2) Plaintiffs have sufficiently plead regarding the existence of state action 3) Plaintiffs have sufficiently plead regarding the Court's authority to order relief in this action– Plaintiffs' First Amendment claim is subject to dismissal because Plaintiffs fail to adequately plead that the Defendants' decision to provide top-ups to only certain retirees was made on the basis of associational choices.

As a general matter, the Supreme:

> Court has made clear that even though a person has no 'right' to a valuable government benefit and even though the government may deny him [or her] the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his [or her] constitutionally protected interests– especially, his [or her] interest in freedom of speech.

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

The Second Amended Complaint states that "New GM announced that it would 'top-up'

12

the pension benefits for 'certain limited groups' of Delphi retirees...." Second Amended Complaint at ¶36. It goes on to say that New GM also:

> agreed to 'top-up' the pension benefits and provide health benefits to additional union-affiliated Delphi retirees, but not to the salaried retirees of Delphi. On information and belief, this discriminatory decision was... carried out in connection with governmental policies that were politically motivated.... As a results of these actions, Plaintiffs have been denied the benefit of a top-up solely on the basis of their choice not to associate with a union, in violation of the First and Fifth Amendments to the United States Constitution.

*Id*. at ¶37. Additionally, the Second Amended Complaint maintains that the top-up decision "was made for political reasons— on the basis of affiliation with a particular union or unions– and not on the basis of any relevant extenuating circumstances." *Id*. at ¶59. The Complaint also states that "[t]he decision to discriminate against similarly situated retirees based directly on associational status violates the Equal Protection component of the Fifth Amendment... and the First Amendment's associational and speech guarantees" and that the decision [to provide top-ups to certain retirees] "has directly and substantially interfered with Plaintiff's associational rights...." *Id*. at ¶60.

These portions of the Second Amended Complaint offer "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949. The Second Amended Complaint makes conclusory assertions regarding violations of the First Amendment, but nowhere are facts plead that would allow this Court to infer that Defendants have infringed upon Plaintiffs' First Amendment rights by making a decision to award top-ups on the basis of associational choices. Although "'detailed factual allegations'" are not required, Fed. R. Civ. P. 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. at 1949. Without factual support plead, this Court is unable to conclude that the Second Amended Complaint satisfies *Iqbal's* "plausibility" standard.

Even if the Court goes beyond Plaintiffs' Second Amended Complaint and considers its

response to Defendants' motion, Plaintiffs still fail to properly plead under *Iqbal*.

In their response to Defendants' motion, Plaintiffs summarize their First Amendment claim, stating that:

> it is not Plaintiffs['] contention that the Treasury Defendants['] actions were constitutionally infirm because they took 'politics' into account in making these decisions. Rather, it is the fact that the decisions were based on the associational choices made by Delphi retirees, and the political speech associated with those choices, that renders the to-up decisions unconstitutional.

Response at 41. Plaintiffs then go on to raise various factual allegations that they assert support this claim. Defendants contend that none of these allegations provides evidence of a First Amendment violation in the instant matter.

The Court agrees with Defendants. The factual allegations raised in the response do not allow the Court to infer that the specific decision to provide the top-ups to certain retirees was made on the basis of associational choices and the political speech associated with those choices.

In accordance with *Iqbal*, this Court concludes that Plaintiffs' First Amendment claims against the named Treasury Defendants are subject to dismissal.

**D. Bivens**

Even assuming arguendo that the Second Amended Complaint could withstand Defendants' challenges to standing, state action, and the relief sought, and further assuming that Plaintiffs did properly plead both First and Fifth Amendment violations, Plaintiffs' claims against the individual Defendants are still subject to dismissal, as Plaintiffs have not sufficiently plead a claim against them under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Supreme Court precedent binds this Court in its evaluation of whether a *Bivens* action may be permitted. Following its decision in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court, as noted in *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 67 (2001), has

14

"consistently refused to extend *Bivens* liability to any new context or any new category of defendants."  The Supreme Court further commented in *Malesko*:

> In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct.  Where such circumstances are not present, we have consistently rejected invitations to extend *Bivens*, often for reasons that foreclose its extension here.

*Malesko*, 534 U.S. at 70.  Although the Supreme Court permitted a *Bivens* action for a claim brought under the Due Process Clause of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979), the Court subsequently in *Schweiker v. Chilicky*, 487 U.S. 412 (1988) "declined to infer a damages action individual government employees alleged to have violated due process in their handling of Social Security applications."  *Malesko*, 534 U.S. at 68.  In *Bush v. Lucas*, 462 U.S. 367 (1983), the Supreme Court "declined to create a *Bivens* remedy against individual Government officials for a *First Amendment* violation arising in the context of federal employment."  *Malesko*, 534 U.S. at 68.

In the Second Amended Complaint, Plaintiffs state that they seek damages against the individual named Defendants based on a "violation of their right to equal protection under the Fifth Amendment...."  Second Amended Complaint at ¶63.  However, Plaintiffs plead no facts within the Second Amended Complaint that support this Court finding that the holding of *Bivens* permits Plaintiffs to pursue such an action against the individual Defendants.  Plaintiffs' response brief spends one paragraph asserting that a *Bivens* suit is appropriate here but nothing Plaintiffs present convince the Court of that in light of the above Supreme Court precedent.[8]

---

[8] Plaintiffs are correct that the Bankruptcy Court did issue an order indicating that the filing of the Second Amended Complaint did not violate any order of that Court.  Plaintiffs' Response, Exhibit G.  However, nothing in the Bankruptcy Court's order requires this Court to hold that Plaintiffs' *Bivens* claims are not subject to dismissal.

15

Accordingly, Plaintiffs' *Bivens* claims are subject to dismissal.

### E. Other arguments not addressed

The Court declines to address any additional arguments Defendants raise in their motion. Defendants' motion is being granted based on the above conclusions.

### F. Summary

Although this Court cannot conclude for certain, perhaps the Second Amended Complaint would not be subject to dismissal had it been filed prior to the Supreme Court's 2007 ruling in *Twombly* and 2009 ruling in *Iqbal*. However, the standard set forth in *Twombly* and *Iqbal* bind this Court until such time as the Supreme Court overrules those cases. That standard requires the Court to conclude that the Second Amended Complaint must be dismissed as to the named Treasury Defendants.

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' Renewed Motion to Dismiss [164] is **GRANTED**. Plaintiffs' claims against the named Treasury Defendants are dismissed.

Plaintiffs' claims against the PBGC in Counts 1, 2, 3, and 4 of the Second Amended Complaint have not been dismissed. As stated above, Plaintiffs may continue to pursue these counts against the PBGC. The Court also anticipates that Plaintiffs will continue to utilize the political process to pursue the relief they seek.

**SO ORDERED**.

Dated: September 1, 2012                s/Arthur J. Tarnow
                                        Arthur J. Tarnow
                                        Senior United States District Judge

I certify that a copy of the foregoing document was sent to parties of record on September 1, 2011 by U.S./electronic mail.

                                                s/Michael Williams  
                                                Relief Case Manager  
                                                For the Honorable Arthur J. Tarow