UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DENNIS BLACK, et al.,**

    **Plaintiffs,**                                 CIVIL ACTION NO. 09-cv-13616

    v.                                        DISTRICT JUDGE ARTHUR J. TARNOW

**PENSION BENEFIT GUARANTY**      MAGISTRATE JUDGE MONA K. MAJZOUB
**CORP., et al.,**

    **Defendants.**
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO ENFORCE COURT ORDER [275] AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUPPLEMENTAL REPLY BRIEF [280]

This matter comes before the Court on Plaintiffs' Rule 37 motion to enforce this Court's August 21, 2013 Order. (Docket no. 275.) Defendant Pension Benefit Guaranty Corporation (PBGC) responded to Plaintiffs' motion (docket no. 278), and Plaintiffs replied to Defendant's response (docket no. 279). Also before the Court is Plaintiffs' Motion for Leave to File a Supplemental Reply Brief in support of their Rule 37 motion. (Docket no. 280.) The motions have been referred to the undersigned for consideration. (Docket nos. 276 and 281.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.    BACKGROUND**

The Court previously set forth the relevant facts and procedural history of this matter in its August 21, 2013 Order:

Plaintiffs, participants in a pension plan formerly maintained by Delphi for salaried employees ("Delphi Salaried Plan"), commenced this lawsuit against the PBGC and others challenging the termination of the Plan. The Plan was terminated in or around July 31, 2009 after Delphi Corporation entered into an agreement with the PBGC that placed the Plan under the trusteeship of the PBGC. Plaintiffs' five count Second Amended Complaint alleges violations of ERISA (Counts 1, 2, and 4), the Due Process Clause of the Fifth Amendment (Count 3), and the Equal Protection Clause of the Fifth Amendment (Count 5). (Docket no. 145). Counts 1 through 4 of the Second Amended Complaint are asserted against Defendant PBGC only.

On September 24, 2010, Judge Tarnow held a hearing on two dispositive motions filed by Defendant PGBC. In a bench ruling Judge Tarnow denied both motions on the grounds that they were premature because the parties had not had a chance to engage in discovery. (Docket no. 152, TR at 58:15-16). According to the transcript, no further discussion was had concerning the scope of discovery or whether discovery should proceed on all claims.

Several weeks after the hearing Plaintiffs filed a motion for adoption of a scheduling order which was referred to the undersigned. (Docket no. 152). The motion asked the Court to interpret Judge Tarnow's bench ruling in Plaintiffs' favor and adopt a scheduling order setting a deadline for initial disclosures and permitting eight months for discovery on Counts 1 through 4 of the Second Amended Complaint. (Docket no. 152). Defendant PBGC objected to the motion and offered a different interpretation of the bench ruling, requesting a much more limited three month discovery period limited to Count 4 only with no initial disclosures and limited to determining the completeness of the PBGC's administrative record. Ultimately, the undersigned denied Plaintiffs' motion in March 2011 and entered a scheduling order which allowed three months for discovery as to Count 4 only relative to determining the completeness of the administrative record. (Docket no. 170).

On September 1, 2011 Judge Tarnow ruled that discovery should proceed on Counts 1 through 4 of the Second Amended Complaint. (Docket no. 193). He further concluded that he had not decided that his review would be limited to the administrative record. In addressing the scope of discovery, he stated that his initial focus was on Count 4 "and whether termination of the Salaried Plan would have been appropriate in July 2009 if ... Defendants were required under 29 U.S.C. § 1342(c) to file before this Court 'for a decree adjudicating that the plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the fund.' " (Docket no. 193 at 4). Judge Tarnow stated that a finding by the Court that termination was proper under 29 U.S.C. § 1342(c) would moot the remainder of the complaint pertaining to PBGC. He further stated that he would consider the remaining issues in the complaint if he found that termination of the Plan was not supported under 28 U.S.C.

2

> § 1342(c). Citing the broad scope of discovery under Fed. R. Civ. Pro. 26(b), and stating that he would conduct a *de novo* review of the PBGC's decision to terminate the Plan, Judge Tarnow ordered the parties to serve their initial disclosures by September 16, 2011 and he set April 30, 2012 as the date by which all discovery related to Counts 1 through 4 should be completed.
>
> In December 2011 Plaintiffs filed a second motion to compel discovery which was referred to the undersigned for determination. (Docket no. 197). In the motion Plaintiffs asked the Court to compel responses to their First Requests for Production of Documents nos. 1-14 and Second Requests for Production of Documents nos. 15-17. During the hearing on this motion the undersigned informed the parties that the Court had fully reviewed the parties' briefs on this matter and was familiar with the parties' arguments and with the objections to discovery raised by Defendant. After discussing Judge Tarnow's reliance on the broad scope of discovery under Rule 26(b) and the fact that he had not placed any limitations on discovery as it related to Counts 1 through 4 of the Second Amended Complaint, the undersigned granted the motion. (Docket nos. 204, 205). The March 9, 2012 order states that Defendant PBGC must produce full and complete responses to Plaintiffs' First and Second Requests for Production of Documents nos. 2 through 17 within ninety days of issuance of the order, or by June 9, 2012. [Defendant] filed objections to the March 9, 2012 order. (Docket no. 209). Those objections [were denied as moot. (Docket no. 255.)]
>
> Almost one year later Plaintiffs filed [a] Rule 37 motion to enforce the Court's March 9, 2012 order. (Docket no. 218). In their motion Plaintiffs state[d] that Defendant PGBC [] produced a portion of the responsive documents in its possession but [] withheld almost 30,000 documents on the basis of an unspecified privilege, along with other key data and documents central to the merits of the case. Plaintiffs argue[d] that the time for asserting privilege ha[d] long since passed. They ask[ed] the Court to impose sanctions under Rule 37(b) in light of Defendant's disregard of the Court's orders. They also [sought] an order compelling Defendant to produce documents responsive to Document Request nos. 12 and 13.

(Docket no. 231 at 1-4.)

The Court granted Plaintiffs' motion in part on August 21, 2013. (Docket no. 231.) The August 21, 2013 Order states, in relevant part, that Defendant PBGC must produce on or before September 30, 2013 "documents responsive to Request for Production nos. 12 and 13 generated subsequent to the Plan's termination" and "documents withheld on the basis of privilege as discussed in th[e] order." (*Id*. at 8.) Defendant's Motion for Reconsideration of the Order was

3

denied on September 5, 2013, and its objections to the Order were overruled on July 21, 2014. (Docket nos. 237 and 257.) Defendant then filed a petition for a writ of mandamus with the United States Court of Appeals for the Sixth Circuit, which was denied on September 23, 2014. (Docket no. 266.) Defendant also moved Judge Tarnow to certify for appeal the July 21, 2014 Order overruling Defendant's objections to the August 21, 2013 Order (docket no. 258); Judge Tarnow denied this motion as moot on March 30, 2015 (docket no. 271).

On the discovery motion deadline of August 14, 2015, Plaintiffs filed the instant Rule 37 motion to enforce the August 21, 2013 Order, alleging that Defendant has refused to produce (1) more than 15,000 documents that it withheld on the basis of privilege; and (2) documents related to Defendant's audit of the Plan's assets, which Plaintiffs assert is responsive to their Request for Production (RFP) no. 12. (Docket no. 275.) As relief, Plaintiff seeks production of these documents.

## II. DISCUSSION

### A. Documents Withheld on the Basis of Privilege

Defendant argues that it need not produce the 15,000 documents that Plaintiffs seek because the parties agreed to exclude them from Plaintiffs' discovery requests. (Docket no. 278 at 12-16.) According to Defendant, the alleged agreement was effectuated through communications between the parties in January and February of 2013. On January 30, 2013, Plaintiffs' counsel sent a letter to Defendant's counsel, which states, in relevant part:

> In the spirit of cooperation, Plaintiffs have worked with PBGC to modify the discovery schedule numerous times to accommodate the PBGC's repeated requests for production extensions. Similarly, you'll recall that, in an effort to speed the process along, Plaintiffs made a number of offers to narrow the scope of production, some of which the PBGC has taken advantage of (*e.g.,* our proposal that the PBGC need not review or produce responsive "archived documents"), and some of which the PBGC has ignored (for example, after Plaintiffs explicitly agreed that the PBGC need not produce bankruptcy court filings in its

4

productions, the PBGC's very first production consisted largely of just that; indeed the PBGC has produced such documents by the thousands). In the same vein of cooperation, Plaintiffs wish to make clear that, notwithstanding their right to have the PBGC produce the entirety of documents that have been improperly withheld, and notwithstanding our position that had the PBGC limited its productions to those documents expressly requested rather than producing voluminous, irrelevant documents (like the bankruptcy filings) solely to be able to claim (as has often happened during our conference calls) that the PBGC has produced "hundreds of thousands" of pages of documents, Plaintiffs are willing to modify the scope of their request regarding the remaining responsive documents in two ways:

(1) PBGC's production going forward need not include any documents created, received or produced by the PBGC prior to August 2008.
(2) PBGC need not produce any correspondence solely among lawyers in its Office of Chief Counsel, or between lawyers in its Office of Chief Counsel and its outside counsel.

Again, just as with the Plaintiffs' previous offers, it is ultimately the PBGC's decision whether to accept these modifications or to continue producing documents that Plaintiffs have not asked for. However, we would ask that in deciding how to proceed the PBGC be mindful of the Court's current Scheduling Order, which cuts off the time for discovery motions at the end of March (and cuts off discovery at the end of April). The PBGC's plan to finalize its production in the middle of April is plainly incompatible with these deadlines, and to the extent that these delays could be ameliorated by a modification to the discovery parameters, we hope that the PBGC will accept our good faith offer to negotiate an appropriate modification.

(Docket no. 275-6 at 3-4 (footnote omitted).) Defendant claims that it accepted Plaintiffs' offer in a February 13, 2013 letter from Defendant's counsel to Plaintiffs' counsel:

PBGC appreciates plaintiffs' offer to narrow the production to exclude documents created, received or produced by PBGC prior to August 1, 2008 and to exclude correspondence solely among lawyers in its Office of Chief Counsel and its outside counsel. We will remove those documents from the privilege log as we work to complete it. However, as a practical matter, this offer comes far too late in PBGC's review process to have a meaningful impact on the time within which PBGC can complete its production.

(Docket no. 275-7 at 3.) Plaintiffs contest Defendant's assertion that the exchange cited above resulted in an agreement, arguing that there was no meeting of the minds and no consideration (docket no. 275 at 20); the Court agrees. The cited exchange demonstrates that Plaintiffs offered

5

to modify their discovery requests in exchange for the expedited production of documents. And while Defendant accepted Plaintiffs' proposed modifications, it did not expressly agree to accelerate its production, and the Court is not persuaded by Defendant's allegations that it accepted the offer by conduct. Conversely, Defendant argues that Plaintiffs received consideration for the agreement because by limiting its production according to Plaintiffs' offer, Plaintiffs did not receive documents that they no longer wanted. (Docket no. 278 at 13-14.) Defendant's argument in this regard belies logic; if Plaintiffs no longer wanted those documents, Plaintiffs would not have consistently and continuously sought them throughout the discovery period, and this issue would not be before the Court.

The lack of an agreement is further evidenced by the pleadings related to the August 21, 2013 Order, and the Order itself. Plaintiffs filed their Rule 37 motion to enforce this Court's March 9, 2012 Order one week after the exchange cited above. In that motion, Plaintiffs mention their January 30, 2013 offer and Defendant's response, but they continued to seek the entire lot of 30,000 documents that were withheld on the basis of privilege. (*See* docket no. 218 at 10, 21.) In its response to Plaintiffs' motion, Defendant notes Plaintiffs' offer in a footnote, but makes no mention of an ensuing agreement and does not dispute the production of any documents on the basis of such an agreement. (*See* docket no. 223 at 19 n.40.) The Court addressed Plaintiffs' motion in its August 21, 2013 Order, in which it noted Plaintiffs' assertion that Defendant had withheld almost 30,000 documents on the basis of an unspecified privilege, found that Defendant had waived its right to assert privilege with regard to those documents, and ordered Defendant to produce the "documents withheld on the basis of privilege as discussed in [the] order."[1] (Docket no. 231 at 4, 7, 8.) Notably, the Court did not acknowledge the alleged

---

[1] Defendant seemingly interprets the Order differently; however, Defendant's interpretation does not supersede that of the issuing Court.

February 2013 agreement, and it did not reduce the number of documents to be produced in accordance with the alleged agreement.

Moreover, as Plaintiffs point out, Defendant raised four separate challenges to the August 21, 2013 Order, but not once did Defendant challenge the Order or the production of any of the 30,000 documents on the basis of the alleged February 2013 agreement. (*See* docket no. 275 at 19.) To raise such an argument over two years later at this juncture is inappropriate. Additionally, while the Court declines to do so, one could reasonably construe Defendant's argument as a frivolous last-ditch effort to delay or ultimately avoid the production of these documents. Accordingly, the Court holds that the August 21, 2013 Order stands as written. To the extent that Defendant has not produced all of the approximately 30,000 documents that it had previously withheld on the basis of privilege, it will do so within thirty days of this Opinion and Order. Defendant is advised that failure to comply with this Opinion and Order in this regard may result in sanctions under Federal Rule of Civil Procedure 37(b)(2)(A).

**B.     Documents Related to Defendant's Audit of the Plan's Assets**

Plaintiffs assert that Defendant has withheld documents generated between 2011 and 2012 that are responsive to Request for Production no. 12 concerning its audit of the Plan's assets, in violation of the August 21, 2013 Order. (Docket no. 275 at 7, 22.) Specifically, the documents that Plaintiffs seek in this regard are documents generated by Bazillo, Cobb, and Associates (BCA), a contractor employed by Defendant between June 2011 and August 2012 to provide asset evaluation services related to the Delphi pension plans.[2] (*Id*. at 24; docket no. 275-11 at 4.)

---

[2] Defendant terminated BCA's service contract for deficient performance in August of 2012 and subsequently contracted with KPMG to perform the asset evaluation work. Without conceding its responsiveness to any of Plaintiffs' document requests, Defendant has agreed to produce the final Plan Asset Audit generated by KPMG once it is complete. (Docket no. 275 at 23-24; docket no. 275-11 at 4; docket no. 278 at 20.)

Plaintiffs' Request for Production no. 12 asks Defendant to produce "[a]ll documents and things received, produced or reviewed by the PBGC since January 1, 2006 related to the PBGC's potential or actual liability for any benefit payments under Delphi's Pension Plans." (Docket no. 275-2 at 11.) Plaintiffs argue that the documents sought are responsive to RFP no. 12 because Defendant needs to know the value of the Plan's assets to determine its liability for benefit payments under the Plan. (Docket no. 275 at 22-23.) To support this argument, Plaintiffs cite to a report generated by Defendant's Office of Inspector General in which Defendant's Assistant Inspector General for Audit states that "[t]he value of a plan's assets is important because it is used in calculating retirement benefits. For some plans, increases in the calculated value of plan assets at the date of plan termination result in increased benefits for plan participants." (*Id.* at 23 (citing docket no. 275-10 at 4).) Plaintiffs also cite to a November 28, 2014 letter from Defendant's Director to members of Congress regarding the Delphi Pension Plans, in which she states that completion of asset evaluation reports "are a necessary prerequisite to issuing final benefit determinations." (*Id.* at 23 (citing docket no. 275-11 at 5).) Plaintiffs also assert that Defendant has been on notice since January of 2013 that Plaintiffs were seeking the documents at issue in response to RFP no. 12 and that Defendant had not disputed their responsiveness until now, instead asserting that the documents had not yet been created. (*Id.* at 24-25.)

Defendant argues that it should not be required to produce the documents that Plaintiffs seek because Plaintiffs' RFP no. 12 did not state with reasonable particularity a request for documents related to Defendant's audit of the Plan's assets.[3] (Docket no. 278 at 16.) Defendant expounds that no reasonable reading of the RFP suggests that it encompasses such documents because by its terms, the RFP is directed at documents related to "liability," and nowhere in the

---

[3] Requests for production "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b).

8

RFP do the words "assets," or "plan asset audit" appear. (*Id*. at 17-18.) Defendant contends that if Plaintiffs' position – that information related to the Plan's assets relates to Defendant's actual or potential liability for benefits payments – is adopted, the purpose of the reasonable particularity rule would be defeated because "[p]arties like PBGC would not only have to produce the specific documents that the request put them on notice that the other party wanted, but they would also have to guess, at their peril, everything that the other party might think was 'related' to those documents." (*Id*. at 18.)

While Defendant's argument may hold weight in some instances, it is illogical here in light of Defendant's own statements cited by Plaintiffs, *supra*. If, as Defendant says, the value of a plan's assets and the asset evaluation reports are so "important" and "necessary" to calculating benefits and making benefit determinations, then ascertaining that documents concerning the audit of the Plan's assets are indeed responsive to Plaintiffs' request for documents related to Defendant's liability for benefit payments under the Plan would not require any guesswork; such a determination should be automatic. Having previously found in the August 21, 2013 Order that information responsive to Request for Production no. 12 that has been received, produced, or reviewed by Defendant subsequent to the Plan's termination is relevant to the claims at issue in this case (docket no. 231 at 6), and in currently finding that documents concerning the audit of the Plan's assets are responsive to RFP no. 12, the Court will grant Plaintiffs' motion in this regard and order Defendant to produce those documents within thirty days of this Opinion and Order.

**IT IS THEREFORE ORDERED** that Plaintiffs' Rule 37 motion to enforce this Court's August 21, 2013 Order [275] is **GRANTED** as follows:

    a.    To the extent that Defendant has not produced all of the approximately 30,000 documents that it had previously withheld on the basis of privilege, it will do so within thirty (30) days of this Order. Failure to comply with this Order may result in sanctions; and

    b.    Defendant will produce all documents in its possession related to an audit of the Plan's assets as they are responsive to Plaintiffs' Request for Production no. 12 within thirty (30) days of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Supplemental Reply Brief [280] is **DENIED** as moot.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: March 11, 2016        s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated: March 11, 2016        s/ Lisa C. Bartlett
                                       Case Manager